IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:12-CV-287-FL

| | | |
|---|---|---|
| SABRINA STAGGERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Sabrina Staggers ("plaintiff" or "claimant") challenges the final decision of defendant Acting Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") on the grounds that she is not disabled. The case is before the court on the parties' motions for judgment on the pleadings (D.E. 26, 28). Both filed memoranda in support of their respective motions (D.E. 27, 29). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E. dated 17 June 2013). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

## I. BACKGROUND

### A. Case History

Plaintiff filed an application for DIB on 24 June 2010 alleging the onset of disability on 1 January 2009. Transcript of Proceedings ("Tr.") 18. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 18. On 6 November 2010, a hearing was held before an Administrative Law Judge ("ALJ"). Tr. 28-79. The ALJ issued a

decision denying plaintiff's claim on 6 January 2011. Tr. 18-27. Plaintiff timely requested review by the Appeals Council. Tr. 13-14. On 21 August 2012, the Appeals Council admitted additional evidence (Tr. 495-501), but denied the request for review (Tr. 1-5). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 28 September 2012, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* Mot. (D.E. 1), Order Allowing Mot. (D.E. 4), Compl. (D.E. 5)).

### B. Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509] ["Listings"], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .

(iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .

(iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 47 years old on the alleged onset date of disability and 49 years old on the date of the hearing. *See* Tr. 26 ¶ 7. She has at least a high school education. Tr. 26 ¶ 8; 36.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since 1 January 2009, the date of the alleged onset of disability. Tr. 20 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: hypertension and degenerative joint disease of the right, non-dominant shoulder and the right knee. Tr. 20 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals one of the Listings. Tr. 21 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform work at the light exertional level—that is, to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand, walk, and sit for 6 hours in an 8-hour day. *See* 20 C.F.R. § 404.1567(b).[1] He found, however, that the following limitations restricted her to a significant range of light work:

---

[1] 20 C.F.R. § 404.1567(b) define "light work" as involving:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 12 Feb. 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

> The claimant can no more than occasionally perform postural activities, including climbing, crouching, stooping, kneeling, balancing, and crawling; is unable to perform overhead reaching with her right, non dominant upper extremity; and cannot perform work requiring exposure to hazards or climbing of ladders, ropes, or scaffolds.

Tr. 21 ¶ 5. At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 26 ¶ 6. At step five, the ALJ rejected the testimony of a vocational expert that there were no jobs in the national economy existing in significant numbers that plaintiff could perform. Tr. 27 ¶ 10. Instead, the ALJ found that the limitations on plaintiff did not significantly erode the light occupational base and that, using Medical-Vocational Rule 202.20 as a framework, there were jobs in significant numbers in the national economy that plaintiff could perform. Tr. 26 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 27 ¶ 11.

### D. Standard of Review

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401. When, as here,

the Appeals Council accepts into the record evidence relating to the alleged period of disability not presented to the ALJ, the court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." *Wilkins v. Sec., Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g, Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

E.     **Standards for Evaluation of Opinion Evidence from Medical Sources**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 404.1527(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D. W.Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 404.1527(d)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion."). Where there are multiple opinions from a single source, an ALJ does not necessarily have to discuss each opinion separately to make clear the weight given it and the underlying reasons. *See* Soc. Sec. R. 96-2p, 1996 WL 374188, at *2.

The same factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other so-called "acceptable medical sources") apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), such as psychological counselors, therapists, or physicians' assistants. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *4 (9 Aug. 2006); *see also* 20 C.F.R. § 404.1527(d) (evaluation of opinion evidence); § 404.1513(d)(1) (including physicians' assistants as "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6 ("[The ALJ] generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."); *Napier v. Astrue*, No. TJS-12-1096,

2013 WL 1856469, at *2 (D. Md. 1 May 2013) ("[T]he ALJ is required to 'explain in the decision the weight given to . . . any opinions from treating sources, non-treating sources, and other non-examination sources who do not work for the [the Social Security Administration].").

The opinions of physicians and psychologists, and other sources on issues reserved to the Commissioner, that is, legal conclusions, are not entitled to special weight because of their source, including statements that the claimant is disabled or unable to work. 20 C.F.R. § 404.1527(e)(1), (3). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, at *3 (2 July 1996).

## II.     PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred by: (1) giving little weight to the opinions of two treating physicians, Robert Boswell, M.D. and Peter Gemelli, M.D., and examining consultant Peter Morris, M.D., that plaintiff had functional limitations in lifting that precluded her from performing light work while giving greater weight to the respective opinions of two non-examining consultants that she could perform work at the light and medium levels; and (2) failing to provide evidence of jobs existing in significant numbers in the national economy that plaintiff could perform based upon the ALJ's RFC determination. Because the court finds that the ALJ's evaluation of the medical opinion evidence regarding plaintiff's lifting capacity is dispositive of this appeal, the court will address only that issue below.

## III.    ALJ'S EVALUATION OF MEDICAL OPINION EVIDENCE ON PLAINTIFF'S LIFTING CAPACITY

### A.     Summary of Key Evidence Regarding Plaintiff's Lifting Capacity

In April 2006, plaintiff suffered a work-related injury to her right shoulder. Tr. 404. Dr. Boswell treated plaintiff for the resulting shoulder impairment from 4 January 2007 to 18

9

Case 7:12-cv-00287-FL   Document 31   Filed 02/14/14   Page 9 of 18

February 2010.[2] On 9 January 2007, plaintiff underwent shoulder surgery by Dr. Boswell (Tr. 404-05), and the surgery was successful (Tr. 395 (plaintiff reported that she was feeling "100% better" with unrestricted movement, and Dr. Boswell released her to return to work with no restrictions)). Approximately one year later, on 14 April 2008, plaintiff returned to Dr. Boswell complaining that she had begun experiencing mild pain in her right shoulder. Tr. 394. After approximately one year of unsuccessful conservative treatment, including injections and physical therapy, plaintiff underwent a second surgery to repair a torn rotator cuff on 7 April 2009. Tr. 336-37, 339, 382. During the post-operative period, plaintiff suffered two falls and another incident that aggravated her shoulder causing increased pain. Tr. 470. Dr. Boswell treated the increased pain with injections, pain medications, physical therapy, and a TENS unit.[3] *See, e.g.*, Tr. 462, 464, 470, 494.

In treating plaintiff in the period following her second surgery, Dr. Boswell consistently limited plaintiff to lifting no more than five pounds. *See* Tr. 463 (23 Nov. 2009), Tr. 461 (4 Jan. 2010), Tr. 494 (18 Feb. 2010). While on two of these occasions Dr. Boswell found plaintiff to have good mobility, any movement was accompanied by pain and/or weakness. Tr. 470 (noting plaintiff to have "decent mobility in her shoulder both actively and passively, although she is complaining of continued ongoing discomfort in her shoulder and weakness"); Tr. 462 (noting plaintiff to have "excellent mobility but she is painful with resisted testing as well as a positive impingement"). Further, on 18 February 2010, the date plaintiff last saw him for her shoulder pain, he concluded that the lifting limitation would "likely be permanent." Tr. 494.

At his visit with plaintiff on 18 February 2010, Dr. Boswell found that plaintiff was at maximum medical improvement and that further surgery was not warranted. Tr. 494.

---

[2] Dr. Boswell also treated plaintiff for her knee impairment, which is not at issue in this appeal. *See, e.g.*, Tr. 381.

[3] A "TENS unit" is a transcutaneous electrical nerve stimulation device used to treat pain.

Accordingly, he referred her to Dr. Gemelli, a board-certified specialist in physical and rehabilitative medicine (Tr. 495), for management of her shoulder pain. Tr. 494.

Plaintiff began seeing Dr. Gemelli on 5 April 2010. Tr. 490. At his initial assessment and subsequent visit with plaintiff, Dr. Gemelli continued her on the five-pound lifting limitation imposed by Dr. Boswell. *See* Tr. 488 (including in plaintiff's treatment plan that she "[c]ontinue previous work restrictions per Dr. Boswell"), Tr. 492 (same). Plaintiff saw Dr. Gemelli three additional times (Tr. 476-78, 481-86) and his physician's assistant one time (Tr. 479-80), the last visit coming on 23 August 2010.

As detailed below, Dr. Gemelli completed a medical source statement dated 30 December 2011, prior to the ALJ's decision, but submitted for the first time to the Appeals Council. The Appeals Council, of course, made no findings regarding the medical source statement or any of the other evidence it admitted for the first time other than to state with respect to all of it that "[w]e found that this information does not provide a basis for changing the Administrative Law Judge's decision." Tr. 2.

Dr. Morris performed his consultative examination of plaintiff on 5 September 2009. Tr. 408-15. He concluded that plaintiff "could be expected to lift" no more than 10 pounds either occasionally or frequently. Tr. 414.

On 18 February 2011, just over four weeks after the ALJ's decision, certified rehabilitation counselor Stephen D. Carpenter[4] conducted an assessment of plaintiff, the results

---

[4] Carpenter holds a Master's degree in education and, in addition to being a certified rehabilitation counselor, is a certified disability management specialist, certified case manager, and certified medical exercise specialist. *See* Tr. 497. He has also testified as an independent vocational expert in Social Security disability appeals. *See, e.g.*, *Howard v. Astrue*, No. 4:07-CV-195-FL, 2009 WL 863581, at *7 (E.D.N.C. 26 Mar. 2009) (mag. judge's mem. & recommendation as adopted by order at same citation); *Viverette v. Astrue*, No. 5:07-CV-395-FL, 2008 WL 5087419, at *8 (E.D.N.C. 24 Nov. 2008) (same); *Morton v. Astrue*, No. 4:07-CV-39-FL, 2008 WL 1837384, at *7 (E.D.N.C. 23 Apr. 2008) (same); *Deese v. Astrue*, No. 5:06-CV-458-D(2), 2008 WL 244176, at *5 (E.D.N.C. 29 Jan. 2008) (same).

11

of which are set out in a report dated 10 March 2011 (Tr. 497-501). The report was submitted for the first time to the Appeals Council.

### B. ALJ's Findings on Plaintiff's Lifting Capacity

In finding, notwithstanding this evidence, that plaintiff had the capacity to perform light work, the ALJ first explained that he gave the opinions of treating providers Drs. Boswell and Gemelli controlling weight except for their mutual conclusion regarding plaintiff's limitation on lifting. Tr. 24 ¶ 5. The ALJ provided the following reasons for his finding:

> Following a thorough review of the evidence of record, I have generally accorded these opinions controlling weight. However, as the weight lifting restrictions are unsupported by the weight of the evidence of record, in particular [plaintiff's] often intact range of motion, mild strength loss (4/5), generally controlled pain with the use of medication, and activities of daily living, I have given this limitation little weight.

Tr. 24 ¶ 5.

The ALJ also rejected the 10-pound lifting limitation found by examining consultant Dr. Morris on the basis that plaintiff "had improved significantly following her right knee and right shoulder surgeries and with the use of physical therapy and medication" and that medical evidence indicated that plaintiff had "intact strength generally with only mild weakness of her right, non-dominant arm (4/5), and a good ability to move about and engage in activities of daily living." Tr. 24 ¶ 5.

While rejecting the lifting limitations imposed by these physicians, the ALJ found support for his own determination in the opinions of two non-examining state consultants—one who, like the ALJ, found plaintiff capable of light work (*i.e.*, lifting and carrying up to 20 pounds occasionally and 10 pounds frequently) (Tr. 431) and another who found her capable of medium work (*i.e.*, lifting and carrying up to 50 pounds occasionally and 25 pounds frequently), *see* 20

Case 7:12-cv-00287-FL   Document 31   Filed 02/14/14   Page 12 of 18

C.F.R. § 404.1567(c) (Tr. 453). The ALJ gave these opinions "some weight" on the grounds that they were "supported by the objective medical evidence of record." Tr. 24 ¶ 5.

### C. Analysis

Plaintiff asserts that the reasons given by the ALJ for rejecting the opinions of Drs. Boswell, Gemelli, and Morris, and accepting, in part, the opinions of the nonexamining consultants are not supported by substantial evidence. The court agrees.

First, the ALJ's findings with respect to Dr. Boswell's and Dr. Gemelli's opinions that plaintiff had an "often intact range of motion" in her right shoulder and with respect to Dr. Morris's opinions that plaintiff had "a good ability to move around," to the extent it signified an intact range of motion with the right shoulder, are contrary to the medical evidence of record. (Tr. 24 ¶ 5; *see also* Tr. 23 ¶ 5 (finding that plaintiff had a "generally intact range of motion")). At no point did any of these physicians find that plaintiff had a fully intact range of motion in her right shoulder.

For example, while Dr. Boswell noted on two occasions that plaintiff had good mobility, as discussed above, he made no specific findings as to her range of motion and noted that any movement was accompanied by pain and weakness. Tr. 462, 470.

During each of his five examinations of plaintiff, Dr. Gemelli found that although her forward flexion was intact, her internal and external rotation were "limited due to pain." Tr. 477, 482, 485, 488, 491. Based on these examinations, he consistently found her to have reduced range of motion, as well as weakness. Tr. 477, 482, 485, 488, 492. The physician's assistant in Dr. Gemelli's practice who handled one of plaintiff's visits made the same findings. Tr. 480. Similarly, Dr. Morris found plaintiff to have decreased range of motion in her right shoulder at

13

Case 7:12-cv-00287-FL   Document 31   Filed 02/14/14   Page 13 of 18

his consultative examination of her. Tr. 413-14. The medical evidence does not otherwise show that plaintiff was found to have an "often intact range of motion." Tr. 24 ¶ 5.

Because the ALJ's finding regarding the range of motion of plaintiff's right shoulder is not supported by the record, it does not serve as a valid justification for rejecting the opinions of the treating and examining medical sources regarding plaintiff's lifting limitation. Thus, one of the handful of reasons given by the ALJ for his rejection of these opinions fails.

Another justification given by the ALJ with respect to the opinions of all three physicians—plaintiff's activities of daily living ("ADLs")—provides little, if any, support for his rejection of their opinions on lifting. The reason is that most, if not all, of the ADLs discussed by the ALJ do not appear to involve lifting more than 5 pounds (the limit set by Dr. Boswell and adopted by Dr. Gemelli) let alone 10 pounds occasionally and frequently (the limit set by Dr. Morris) or 10 pounds frequently and 20 pounds occasionally (the light exertional lifting limitation), to the extent they involve lifting at all. The ADLs cited by the ALJ were: watching television, visiting with family, filling out Social Security Administration paperwork legibly and completely, preparing simple meals, dusting and some light housework, driving, shopping, handling money, reading, playing games on and otherwise using a computer, taking care of her personal needs, going to the beauty salon, and attending church. Tr. 23 ¶ 5.

Moreover, with respect to Dr. Boswell's and Dr. Gemelli's opinions, while substantial evidence supports the ALJ's finding that plaintiff had "generally controlled pain with the use of medication," there is also considerable medical evidence that she continued to have significant additional pain when using her right arm. *See* Tr. 490 (noting that "pain is made worse with moving her arm"), Tr. 487 (pain is made worse with moving), Tr. 484 (plaintiff reporting that while her pain control was "much improved," it was made worse "with lifting, pulling, pushing

and holding up her arm"), Tr. 481 (plaintiff reporting that while her pain was "well controlled" on the current medication, any residual pain was made better by "not using her arm" and made worse "with lifting, pulling, pushing and holding up her arm"), Tr. 476 (reporting "fairly well controlled pain" but "continues to have pain with use of the right upper extremity"); *cf.* Tr. 479 ("She still experiences exacerbational or activity-induced pain but it seems reasonably managed. . . . The pain restricts the patient from some daily activities.") (finding by Dr. Gemelli's physician's assistant). It is not apparent, without further explanation, how plaintiff's relief from right shoulder pain generally justifies rejection of the physicians' lifting limitations in light of the evidence that lifting still causes her pain.

These opinions of the three physicians that plaintiff had limitations on lifting lower than that found by the ALJ find support in the subsequent medical source statement by Dr. Gemelli submitted for the first time to the Appeals Council. In it, Dr. Gemelli expressed a different lifting limitation on plaintiff than in the records before the ALJ. Tr. 495-96. Specifically, after summarizing his treatment of plaintiff, Dr. Gemelli stated that her right arm impairment "prevents her from lifting, pushing or pulling more than 10-15 pounds occasionally with the right arm." Tr. 496.

While Dr. Gemelli's more recent opinion sets a higher lifting limitation than his prior opinion before the ALJ, it still is not equivalent to the lifting limitation at the light exertional level, albeit expressed in terms of only the right arm.[5] Again, that level provides a limit of 20 pounds for occasional lifting, not simply 10 to 15 pounds. Moreover, the more recent limitation for occasional lifting of 10 to 15 pounds suggests a lower limitation for frequent lifting, below the 10-pound limitation in the light exertional level. Further, the more recent limitation on lifting

---

[5] The parties do not address the extent to which, if any, this limitation, expressed in terms of the right arm, materially differs from the other limitations discussed which are not specific to either arm and therefore presumably concern lifting with both arms. The Commissioner should address this issue in the remand proceedings.

is accompanied by limitations on pushing and pulling, which were not included with the prior lifting limitation. For these reasons, the court concludes that Dr. Gemelli's 30 December 2010 opinion on lifting, considered with the other relevant portions of the record, does not otherwise provide substantial evidence supporting the ALJ's determination on plaintiff's lifting capacity and, to the contrary, tends to undermine it.

Certified rehabilitation counselor Carpenter's assessment of plaintiff, submitted for the first time to the Appeals Council, also tends to undermine the ALJ's determination regarding plaintiff's lifting capacity. Carpenter conducted an extensive battery of tests not apparently used by the other medical sources and made the finding, among others, that plaintiff had a "safe" lifting capacity of 5 pounds with the right arm and 5 to 10 pounds when using both hands in coordination. Tr. 500. While Carpenter's examination of plaintiff occurred after the ALJ's decision, the continuity of plaintiff's shoulder impairment and the brief period between his assessment and the ALJ's decision—just over four weeks—does not deprive Mr. Carpenter's report of relevance to plaintiff's condition during the alleged period of disability at issue in the instant appeal. The need for evaluation of Carpenter's assessment provides a further basis for remand. *See Jackson v. Astrue*, No. 10-2226, 2012 WL 580239, at *3-4 (4th Cir. 23 Feb. 2012) (remanding case for ALJ to consider evidence concerning Listing 12.05 where court "cannot say that substantial evidence supports the finding that Jackson failed to establish this prong [of Listing 12.05] where new and material evidence submitted to the Appeals Council contradicts both the ALJ's findings and underlying reasoning, and the Appeals Council failed to provide any reason for disregarding this additional evidence").

When justifying his attribution of "some" weight to the nonexamining consultants' opinions on the basis of "the objective medical evidence of record," the ALJ is presumably

16

Case 7:12-cv-00287-FL   Document 31   Filed 02/14/14   Page 16 of 18

relying on the same medical evidence he cites for his ruling on Dr. Boswell's and Dr. Gemelli's opinions—that is, plaintiff's purportedly intact range of motion, mild strength loss, and pain control. Tr. 24 ¶ 5. For the same reasons set out with respect to these treating physicians' opinions, this evidence is insufficient to support the ALJ's attribution of some weight to the consultants' opinions.

For this and the other reasons stated, the court concludes that the ALJ's attribution of little weight to the opinions of treating physicians Drs. Boswell and Gemelli and examining consulting physician Dr. Morris regarding plaintiff's lifting capacity, and some weight to the opinions of the nonexamining consulting physicians regarding plaintiff's lifting capacity is not supported by substantial evidence and requires remand. In making this determination, the court expresses no opinion on the weight to be accorded any of the evidence. That is a matter for resolution by the Commissioner.

On remand, the Commissioner should provide a clear explanation of the basis of her resolution of the issue of whether plaintiff's right arm is dominant or nondominant. The ALJ, of course, found her right arm to be nondominant (Tr. 20 ¶ 3; 21 ¶ 5). There was evidence to support this determination, including Dr. Morris's finding that plaintiff was left-hand dominant (Tr. 413) and the same finding by a physical therapist at Dr. Boswell's practice in October 2008 (Tr. 386). On the other hand, Carpenter found plaintiff to be right-arm dominant (Tr. 497) and a different physical therapist at Dr. Boswell's practice found plaintiff to be right-hand dominant in January 2009 (Tr. 375). The situation is complicated by the manner in which plaintiff describes her hand dominance. At the hearing, she identified herself as left-handed, but explained that the only thing she does with that hand is write and that she does everything else with her right hand. Tr. 34; *see also* Tr. 253 ¶ 19.b (plaintiff's representation in a July 2009 function report that she is

left-handed). It was on the basis of a similar statement that Carpenter found plaintiff to be right-arm dominant. Tr. 497. The question of whether plaintiff's right arm is or is not dominant is, of course, potentially material to the scope of the functional limitations imposed by plaintiff's right shoulder impairment. Nonetheless, the ALJ provided no explanation for his determination that plaintiff's right arm is nondominant (although he did mention Dr. Morris's finding to that effect in summarizing his findings (Tr. 24 ¶ 5)).

## IV. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 26) for judgment on the pleadings be ALLOWED, defendant's motion (D.E. 28) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who have until 28 February 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 10 calendar days after filing of the objections on the responding party, but in no event later than 10 March 2014.

This, the 14th day of February 2014.

_____
James E. Gates
United States Magistrate Judge